# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| AWM REAL ESTATE FUND I, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-4149-CV-C-NKL |
| | ) | |
| JEFFERSON BANK OF MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER**

Plaintiff AWM Real Estate Fund I, LLC ("AWM"), seeks to recover lost equity in property which was foreclosed by Defendant Jefferson Bank of Missouri ("Jefferson Bank" or "Bank"). AWM's claims are based on money had and received, fraud, and negligent misrepresentation. Before the Court is Jefferson Bank's Motion for Summary Judgment [Def.'s Mot. Summ. J., ECF No. 36]. For the following reasons, Motion for Summary Judgment is GRANTED.

**I.    Factual Background**[1]

On June 6, 2000, Jefferson Bank loaned Maple Leaf Properties, L.L.C. ("Maple Leaf"), the sum of $1,450,025.00. The members of Maple Leaf executed a promissory note dated June 6, 2000. The 2000 note was secured by a contemporaneous deed of trust on

---

[1] The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering each party's motion, the Court has drawn all inferences in favor of the non-movant.

Maple Leaf's property at 919 Wildwood, Jefferson City, Missouri ("property"). The 2000 deed of trust stated it was for a "Construction Loan . . . an obligation incurred for the construction of an improvement on the Property." [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-A, at 3, ECF No. 44-3.] The 2000 deed of trust also contained a future obligation clause, which is often referred to as a "dragnet" clause; i.e., a clause that causes all future advances and obligations between the same lender and borrower to be secured under the same deed of trust:

> B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. . . . All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be in writing.
> C. All obligations Grantor owes to Lender, which now exist or may later arise to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
> D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by lender under the terms of this Security Instrument.

[Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-A, at 4, ECF No. 44-3.] The 2000 deed of trust further states:

> Default. Grantor will be in default if any of the following occur:
> . . .

   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired.
   Remedies on Default. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

[Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-A, at 5, ECF No. 44-3.] The maximum principal obligation that could be secured under the 2000 deed of trust was $1,450,025.00.

  In March 2007, AWM made two loans to Maple Leaf, reflected in two separate promissory notes, each secured by its own deed of trust on the Property. The first loan was for the sum of $100,000.00, which was secured by a deed recorded on or about March 12, 2007. [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-B, at 4, ECF No. 44-4.] The second loan was for the sum of $300,000.00, which was secured by a deed recorded on or about April 2, 2007. [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-C, at 4, ECF No. 44-5.] Prior to making these loans, AWM obtained a title report, which reflected Jefferson Bank's 2000 deed of trust. AWM also reviewed the 2000 note and deed of trust and a February 2007 loan balance statement issued by Jefferson Bank for the 2000 note, indicating that the loan balance was $1,218,649.97.

  On July 6, 2007, Jefferson Bank made a second loan to Maple Leaf in the sum of $291,000.00. A July 6, 2007 deed of trust on the property was recorded on July 20, 2007. The purpose of this loan was for Maple Leaf to loan funds to companies related to Maple Leaf that were also indebted to Jefferson Bank. The proceeds were then used by the related

companies to pay Jefferson Bank on those debts. [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 1-D, at 1, ECF No. 44-6.]

The July 2007 note states: "Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust executed on July 6, 2007, to a trustee in favor of Lender on real property located in COLE County, State of Missouri." An internal document of Jefferson Bank's states: "The [July 2007] note is secured by a 2nd DT on the Maple Leaf Properties commercial building located at 919 Wildwood (behind note #4693)." [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 3, at 1.] Another internal memorandum of Jefferson Bank lists the collateral securing the June 2000 and July 2007 loans as the "1st DR com'l bldg @ 919 Wildwood" and "2nd DT com'l bldg @ 919 Wildwood," respectively. [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 4, at 1.] Maple Leaf states that it did not intend or agree that the July 2007 note be secured by the 2000 deed of trust.

On or about October 3, 2008, AWM foreclosed its April 2007 deed of trust on the Property. At the foreclosure sale, it purchased the April 2007 deed of trust for $400,000.00. After the sale, the Property remained subject to Jefferson Bank's June 2000 deed of trust, AWM's March 2007 deed of trust, and Jefferson Bank's July 2007 deed of trust.

AWM decided to foreclose its April 2007 deed of trust only after it contacted Jefferson Bank, once in March 2008, and once in September 2008. In March 2008, John Quattlebaum, an employee of AWM, contacted Jefferson Bank in order to inform the Bank that it was preparing to foreclose, and to inquire whether the Bank would like to purchase its

4

March 2007 and April 2007 deeds of trust so that the Bank could protect its deeds of trust, that were junior to AWM's deeds. At that time, Richard Schutt, an employee of Jefferson Bank, declined and indicated that the Bank's deeds of trust that were junior to AWM's deeds, including the July 2007 deed of trust, had not been funded. In September 2008, Mr. Quattlebaum again contacted Mr. Schutt to inform Jefferson Bank of AWM's intentions regarding the Property, and, because of AWM's concerns regarding a potential foreclosure action by Jefferson Bank subsequent to AWM's planned foreclosure. At that time, Jefferson Bank was asked whether AWM could take over Maple Leaf's payments on the 2000 note. Mr. Schutt replied that Maple Leaf was not in default on the 2000 note and that "We can talk about that when you own the property." [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 2, at 3, ECF No. 44-10.] Mr. Quattlebaum did not ask Jefferson Bank if the July 2007 loan had been funded.

Jefferson Bank did not disclose during either the March 2008 or September 2008 conversations that (a) the July 2007 loan was funded; (b) the Bank considered the July 2007 note to be secured by the 2000 deed of trust; and (c) after AWM's foreclosure, the Bank would immediately demand payment of both the 2000 note and the July 2007 note, and would not permit AWM to assume payments on the 2000 note, and would foreclose on the 2000 deed of trust if AWM did not pay the combined balance of Jefferson Bank's 2000 and July 2007 notes.

On October 3, 2008, in reliance on the information it had at that time, AWM foreclosed on the April 2007 deed of trust. According to AWM, if Jefferson Bank had disclosed any of the above-mentioned facts, AWM would not have foreclosed.

On October 13, 2008, Jefferson Bank requested AWM to pay off the 2000 note for $1,460,512.50. On October 21, 2008, an accounting for this amount showed that it comprised payment for the balance of both the 2000 note and the July 2007 note. In exchange for Jefferson Bank delaying its foreclosure sale by seven days, AWM offered to (a) take over and make payments on the 2000 note; (b) pay $1.2 million to $1.25 million to purchase the 2000 deed of trust; and (c) pay a forbearance fee. Jefferson Bank rejected these offers and held a foreclosure sale under the 2000 deed of trust on December 12, 2008. Jefferson Bank notified AWM and Maple Leaf of the foreclosure sale on November 17, 2008, by certified mail, and weekly for four weeks beginning November 19, 2008, by newspaper advertisement. [Schreimann Aff. 6-9, ECF No. 37-2.] At the sale, the property was purchased for the sum of $1,476,000.00 by J. Matthew Herfurth, a son of a former president of an affiliate bank of Jefferson Bank, using funds received from a $1,254,600.00 loan from Jefferson Bank. [Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. Ex. 7, at 1.] The trustee distributed no proceeds of the sale to AWM, but, instead, treated the July 2007 loans as being covered by the 2000 deed of trust and, therefore, superior to AWM's deed of trust which was extinguished by the foreclosure.

**II.    Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

## III. Discussion

### A. AWM's Claim for Money Had and Received

AWM argues that summary judgment should not be granted on its claim for money had and received because there are disputed issues of material fact and because Missouri courts would not enforce the dragnet clause in the 2000 deed of trust under these circumstances. To succeed on its argument, AWM must show that its deeds of trust were

superior to the July 2007 loan made by Jefferson Bank to Maple Leaf. Specifically, that the July 2007 loan was not covered by the Bank's 2000 deed of trust.

### 1. Was the 2000 Deed of Trust Ambiguous?

AWM claims that there is a factual dispute about which deed of trust was intended to secure the July 2007 note. It suggests that the following extrinsic evidence must be considered to determine AWM's and the Bank's intent in this regard:

(1) Maple Leaf executed a separate deed of trust to cover the 2007 note and that note and deed of trust never referred to the 2000 deed of trust.

(2) Maple Leaf intended the 2007 note to be secured only by the 2007 deed of trust.

(3) When Jefferson Bank discovered AWM's deeds, its representative, Mr. Schutt told Maple Leaf to obtain a deed of release because AWM's loans were superior to the July 2007 deed of trust.

(4) Jefferson Bank referred to the July 2007 deed of trust as subordinate to AWM's liens.

(5) The 2000 deed of trust was related to a construction loan while the 2007 loan was to finance AWM's related companies and AWM was merely the conduit for the loans.

AWM claims that all of this extrinsic evidence can be considered to determine the intent of the parties because there is a latent ambiguity given that the 2000 note and deed of

trust do not expressly identify what future obligations are covered–only those related to construction or both construction and nonconstruction obligations.

The Court finds that there is a no latent ambiguity in either the 2000 or July 2007 deed of trust. Generally speaking, a latent ambiguity exists when a writing on its face is unambiguous but surrounding circumstances make it capable of multiple interpretations. *See Raffles v. Wichelhaus*, (1864) 159 Eng. Rep. 375 (Ex.) (Extrinsic evidence demonstrated that there were two ships named *Peerless*, making the contractual reference to "the Peerless" ambiguous.); *also see Global Network Technologies, Inc. v. Reg'l Airport Auth. of Louisville & Jefferson County*, 122 F.3d 661 (8th Cir. 1997). In the case before this Court there is no latent ambiguity in the 2000 deed of trust. It says:

> All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. . . . All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced.

The 2000 deed of trust on its face applies to all obligations and the extrinsic evidence does not demonstrate that surrounding circumstances make "all obligations" capable of multiple interpretations. Because the 2007 deed of trust applies to the property does not mean that the 2000 deed of trust does not. Both can and do secure the July 2007 note. Additional security was prudent because there was a cap on the amount of money that could be secured by the 2000 deed of trust. Indeed, the 2000 deed of trust said its dragnet clause controlled even if the dragnet clause was not mentioned in future documents creating debt.

9

Further, the primary question is whether the 2000 deed of trust was intended to cover all future obligations between the parties. Thus, the intent of the parties must be measured by their state of mind at the time the 2000 deed of trust was executed, not their intent in 2007.[2] As of 2000, there is nothing in the record, extrinsic or otherwise, that demonstrates Maple Leaf and Jefferson Bank didn't intend the deed of trust to cover "all future obligations" between Maple Leaf and the Bank.

### 2. Is the 2000 Deed of Trust Enforceable?

The Court also rejects AWM's argument that Missouri courts would not enforce the dragnet clause in the 2000 deed of trust because the 2007 loan was completely unrelated to the 2000 construction loan and was made so many years later. To support its argument AWM relies on certain provisions of the Restatement (Third) of Prop.: Mortgages § 2.4 (1997), which limit the applicability of dragnet clauses. The Missouri legislature, however, has already determined that dragnet clauses are enforceable. Mo. Rev. Stat. § 443.055 (2). Further, any draconian impact of a dragnet clause is ameliorated by Mo. Rev. Stat. § 443.055 (6), which permits the owner of the land encumbered by a dragnet clause to terminate the reach of the dragnet clause by simple notice. This provision protects the consumer from being a captive of the dragnet lender since dragnet clauses cloud title and discourage other lenders from extending credit. *See* 2 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 12.8 (5th ed. 2007). Thus, Missouri has already chosen the public policy for

---

[2] Later in this order the Court will separately address the question of whether Maple Leaf and the Bank amended their 2000 agreement by executing the 2007 deed of trust.

Missouri in Mo. Rev. Stat. 443.055 and the Court declines AWM's invitation to graft parts of the Restatement onto the statute. If the Missouri legislature had wanted to adopt the limitations of the Restatement, it would have done so. As Judge Koger succinctly stated:

> Missouri, perhaps because of its more commercial orientation and less debtor orientated background, has not engaged in . . . anti dragnet comments. As early as 1933, the Missouri Supreme Court stated that the words: "any other obligation of the undersigned to the payee herein, now existing or that may hereafter arise" created a valid provision which made the collateral pledged on one loan, collateral for other loans between the parties. Thus, the Missouri courts have been more hospitable to "dragnet clauses" than neighboring states and are more likely to enforce them.

*In re Phillips*, 161 B.R. 824, 826-27 (Bkrtcy. W.D. Mo. 1993) (citing *Russell v. Empire Storage & Ice Co.*, 59 S.W.2d 1061, 1064 (Mo. 1933)).

By its plain meaning, the 2000 deed of trust secured "[a]ll future advances from Lender to Grantor or other future obligations of Grantor to Lender under any . . . evidence of debt . . . executed after this Security Instrument whether or not this Security Instrument is specifically referenced." These words cause the July 2007 note to be secured by the 2000 deed of trust.

### 3. Did the July 2007 Deed of Trust and Note Alter the 2000 Deed of Trust?

It might be argued that the 2007 deed of trust amended the 2000 deed of trust in that the 2007 deed of trust specifically said that the 2007 note was secured by the 2007 deed of trust, without any mention of the 2000 deed of trust. However, there is no evidence that the parties were even considering the 2000 deed of trust at the time they executed the 2007 deed of trust and note, much less that they intended to amend it. The record, even considering the

11

extrinsic evidence, does not suggest both parties intended the 2007 deed of trust to be the sole security for the 2007 note, thereby indicating an intent to amend the 2000 deed of trust dragnet clause.

Summary judgment is therefore granted to Jefferson Bank of Missouri on AWM's claim for money had and received.

### B. AWM's Claim for Fraud

AWM contends that Jefferson Bank committed fraud primarily by concealing information from AWM. To prove a claim for fraud in Missouri, the Plaintiff must show:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

*Constance v. B. B. C. Dev. Co.*, 25 S.W.3d 571, 580 (Mo. Ct. App. 2000) (citing *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo. Ct. App. 1995)). "Failure to establish any element is fatal to recovery." *Id.* (citing *Nigro v. Research College of Nursing*, 876 S.W.2d 681, 686 (Mo. Ct. App. 1994)).

AWM alleges the following facts to support its claim of fraud:

> (1) Defendant secured its Fourth Note with a separate, contemporaneous Fourth Deed of Trust, thereby representing that the Fourth Note was secured by the Fourth Deed of Trust and not by its First Deed of trust, or, at the very least, rendering the relationship between Defendant's Fourth Note, First Deed of Trust and Fourth Deed of Trust ambiguous. *See* Additional Undisputed Material Facts, ¶¶ 44-45.
> (2) Defendant knew AWM believed Defendant's Fourth Note was secured only by the Fourth Deed of Trust because AWM asked Defendant if

12

it wished to purchase AWM's Deeds of Trust in order to protect Defendant's Fourth Deed of Trust from AWM's foreclosure. *Id.* at ¶ 59.

(3) Defendant knew that AWM believed Defendant's Fourth Note was unfunded, and therefore not even possibly a concern relative to Defendant's First Deed of Trust, because Defendant told AWM precisely that in March 2008. *Id.* at ¶ 60.

(4) Defendant also knew that AWM believed Defendant's Fourth Note was either unfunded or secured only by Defendant's Fourth Deed of Trust because in September 2008, AWM only inquired about taking over and making payments on Defendant's First Note and not Defendant's Fourth Note. *Id.* at ¶ 63.

(5) Defendant knew that AWM was seeking information from Defendant because AWM was evaluating foreclosure. *Id.* at ¶¶ 62-64.

(6) However, Defendant did not correct its prior false statement that its Fourth Deed of Trust was unfunded or disclose that Defendant's Fourth Note was secured by its First Deed of Trust, even though Defendant was in the best position to know those things. *See* Additional Undisputed Material Facts, ¶ 68.

[Pl.'s Sugg. in Opp'n to Def.'s Mot. Summ. J. at 20-21.]

AWM seems to argue that Jefferson Bank committed fraud by concealing from AWM material information and creating a false impression of what the Bank intended to do. AWM suggests that Jefferson Bank should have told AWM that the Bank intended to foreclose after AWM foreclosed and that the July 2007 note was funded and secured by both the July 2007 deed of trust and the 2000 deed of trust.

To prove a concealment claim,

[p]laintiffs must show that [d]efendants had a duty to disclose information to [p]laintiffs. This duty can be shown by the existence of unequal positions, as in a relationship of trust from confidential relationship or some demonstrably superior knowledge on the part of one party that is not within the fair and reasonable reach of the other. A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence.

13

*Littlefield v. Edmonds*, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005) (citing *Van Booven v. Smull*, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997)); *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001)).

The threshold issue with regard to AWM's concealment arguments is whether Jefferson Bank owes a duty to disclose information to AWM. There existed no "confidential relationship" between AWM and Jefferson Bank. Additionally, while Jefferson Bank had "superior knowledge" of its own business plans that was unavailable to AWM, that is the nature of business transactions between parties operating at arm's length. The Bank had no obligation to reveal what it would do in the event AWM foreclosed, especially after putting AWM on notice that it would not address that issue until AWM bought the property. Because there is no "relationship of trust" here as envisioned by the *Littlefield* test, Jefferson Bank owed AWM no duty to disclose its intentions as a matter of law. Further, as to the applicability of the 2000 deed of trust to the 2007 note, AWM had equal access to the public record that showed them both as encumbrances on the property. Thus, AWM was able to discover this information for itself and AWM's concealment theory fails.

However, it appears for purposes of summary judgment that Jefferson Bank did misrepresent a fact to AWM when Mr. Schutt falsely stated in March 2008 that the July 2007 note had not been funded. Nonetheless, this narrow claim must also fail because as a matter of law, it was not reasonable for AWM to rely on Mr. Schutt's misrepresentation and the misrepresentation was not the proximate cause of any injuries suffered by AWM. This is so even though the Court recognizes that it is normally for the jury to decide "[w]hether a

14

party's reliance is reasonable." *City of Geneseo v. Utilities Plus*, 533 F.3d 608, 617 (8th Cir. 2008).

Given the context in which Mr. Schutt's comment was made and the language of the 2000 deed of trust, AWM's reliance was not reasonable. The record shows that Mr. Schutt's statement was volunteered by Mr. Schutt when AWM asked whether the Bank wanted to buy AWM's deed of trust to protect the Bank's interest in the 2007 deed of trust. AWM was not asking about whether the 2007 note would be a problem to AWM if either the bank or AWM decided to foreclose. A reasonable person would not rely on that statement months later to decide what amount of debt was secured by the 2000 deed of trust, because that deed of trust contained a dragnet clause. At all times prior to Jefferson Bank's foreclosure sale, which includes the six-month period after the March 2008 statement, as long as the amount secured under the 2000 deed of trust was less than $1,450,025, Jefferson Bank could have loaned a future advance to Maple Leaf, subject to the 2000 deed of trust. Mr. Schutt's March 2008 representation would not have negated this. AWM's risk of having to pay a balance of up to $1,450,025 in order to obtain free and clear title would not have been eliminated by Mr. Schutt telling AWM in March 2008 that the 2007 note was not funded as of that date. The evidence does not show that AWM asked either Maple Leaf or the Bank about the amount of debt secured by the 2000 deed of trust before AWM decided to foreclose. Thus, AWM did not exercise the care that a reasonable person would under these circumstances.

Second, AWM states that it would not have foreclosed if it knew the 2007 note was funded. But if AWM did not foreclose, it would have been faced with a borrower in default,

and its equity interest in the property would rest on the outcome of Jefferson Bank's foreclosure sale. The result, in terms of AWM's interest, would be no different. Thus, AWM has failed to present evidence to show how Mr. Schutt's statement was the proximate cause of AWM's pecuniary loss.

Therefore, there is no genuine issue of material fact on AWM's fraud claim, and summary judgment is granted in favor of Jefferson Bank.

### C. AWM's Claims for Negligent Misrepresentation

AWM's negligent misrepresentation claim is grounded in the same arguments it made in support of its fraud claim. For the same reasons, the Court grants summary judgment to Jefferson Bank on AWM's negligent misrepresentation claim.

## IV. Conclusion

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment [Def.'s Mot. Summ. J., ECF No. 36] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: September 22, 2010  
Jefferson City, Missouri